IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANIEL W. LYTLE,

    Petitioner,

v.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:18-CV-529
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

### I.     Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} The charges against appellant arose from a series of threats and violent acts toward his estranged wife, Tammy Lytle. The first of these involved a break-in at Tammy's apartment in the early morning hours of October 28, 2012, in which appellant allegedly kicked down the apartment door and held a knife to her throat. Subsequently, at various times through November and December 2012, appellant allegedly engaged in conversations and preparatory actions with other individuals to arrange the murder or disfigurement of Tammy.
>
> {¶ 3} The trial court's judgment entry contains two errors on its face: The kidnapping conviction is entered in error on a charge that was dismissed before trial, and the jury's guilty verdict on a further charge of conspiracy to commit kidnapping is not addressed in the entry at all. To ascertain the posture of this appeal, we must therefore recapitulate the basic procedural history of the case in detail, bearing in mind that a trial court speaks through its journal and that any defects in the entry are paramount. *State v. Miller*, 127 Ohio St.3d 407, 2010–Ohio–

5705. " 'A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.' " *State v. Osie*, 140 Ohio St.3d 131, 2014–Ohio–2966, ¶ 83, quoting *Schenley v. Kauth*, 160 Ohio St. 109, 113 (1953), paragraph one of the syllabus.

{¶ 4} The Franklin County Grand Jury originally returned an eight-count indictment: Count 1 alleged conspiracy to commit aggravated murder; Count 2 alleged aggravated burglary; Count 3 alleged aggravated robbery; Count 4 alleged kidnapping; Count 5 alleged violation of a protection order; Count 6 alleged abduction; Count 7 alleged domestic violence; and Count 8 alleged conspiracy to commit kidnapping.

{¶ 5} On the eve of trial, the prosecution submitted an entry to amend the indictment, dropping the domestic violence and kidnapping charges and changing the conspiracy to commit aggravated murder charge to conspiracy to commit murder. The amended indictment renumbered the counts as follows: Count 1 alleged conspiracy to commit murder; Count 2 alleged aggravated burglary; Count 3 alleged aggravated robbery; Count 4 alleged violation of a protection order; Count 5 alleged abduction; and Count 6 alleged conspiracy to commit kidnapping. The case went to trial on the charges as alleged and numbered in the amended indictment, and the jury received verdict forms suitably numbered and defined for each charge.

{¶ 6} The jury returned guilty verdicts on all counts except Count 3, aggravated robbery, for which it returned a verdict of not guilty. At the sentencing hearing, the trial court verbally and accurately announced the verdicts. The court logically determined that Counts 2 and 4, respectively aggravated burglary and violation of a protection order, would merge for sentencing. The court acknowledged that the state elected to sentence appellant on the aggravated burglary charge pursuant to this merger. The court further determined that Counts 1 and 6, respectively conspiracy to commit murder and conspiracy to commit kidnapping, were committed through separate conduct and would not merge. The court then announced sentences as follows: for Count 1, conspiracy to commit murder, 11 years; for Count 2, aggravated burglary, 11 years; for Count 5, abduction, 2 years; and for Count 6, conspiracy to commit kidnapping, 5 years. The sentences for Counts 1, 2, and 6 were to be served consecutively and that for Count 5 concurrently, for a total of 27 years.

{¶ 7} When reducing the announced sentences to a written entry, however, the trial court did not duplicate the above determinations. The court erroneously revived the numbering used in the original indictment and, as a result, sentenced appellant on the kidnapping charge for which he had been neither tried nor convicted. Conversely, the court made no finding of guilt and imposed no sentence pursuant to the jury's guilty verdict on the charge of conspiracy to commit kidnapping.

{¶ 8} In addition to the convictions for conspiracy to commit murder and aggravated burglary, which retained their original numbering (Counts 1 and 2)

across both versions of the indictment, the court's entry thus reflects guilt for "KIDNAPPING, in violation of Section 2905.01, a Felony of the First Degree, as charged in Count Four of the Indictment; * * * VIOLATING A PROTECTION ORDER * * *, in violation of Section 2919.27, a Felony of the Third Degree, as charged in Count Five of the Indictment; and * * * ABDUCTION, in violation of Section 2905.02, a Felony of the Third Degree, as charged in Count Six of the Indictment." Using this partially incorrect numbering, the court then specified the following sentences: Count 1 (conspiracy to commit murder), 11 years; Count 2 (aggravated burglary), 11 years; Count 5 (violation of a protection order), 2 years; and Count 6 (abduction), 5 years. The court merged Count 4 (kidnapping) with Count 2 (aggravated burglary) for sentencing.

{¶ 9} The mere misnumbering of certain counts in the entry's recitation of verdicts is of little importance with respect to those charges that can be clearly discerned from the amended indictment, jury verdicts, and verbal pronouncements of the court at the sentencing hearing. The numbering of charges in an indictment is not essential to the validity of the charges therein if the elements and operative facts of the alleged offenses are otherwise clearly stated and distinct for each offense. *Braxton v. Maxwell*, 1 Ohio St.2d 134 (1965). For this reason, the state of the record does not preclude our review of the guilty verdicts for conspiracy to commit murder, aggravated burglary, violation of a protection order, and abduction. The charges against appellant were clearly and consistently numbered for these charges from the time of the amended indictment to the sentencing hearing, and, in particular, there is no possibility that the trial court's subsequent confusion of charges had any impact on the jury's consideration of the case. *State ex rel. Douthard v. Warden*, 11th Dist. No.2002–T–0145, 2003–Ohio–325.

{¶ 10} The misidentification in the judgment entry of the conspiracy-to-commit-kidnapping verdict as kidnapping proper, however, complete with reference to the kidnapping statute (R.C. 2905.01) rather than the conspiracy statute (R.C. 2923.01) is more serious and requires us to vacate this conviction and remand the matter before we can review appellant's conviction for conspiracy to commit kidnapping. Likewise, the trial court's erroneous renumbering of counts in its recitation of sentences has resulted in the merger of the wrong counts and imposition of inapposite sentences and compels resentencing on all charges. Collectively, these constitute more than mere a scrivener's error and should not be corrected by means of a nunc pro tunc entry. *See generally State v. Henderson*, 5th Dist. No.2013–CR–0409, 2014–Ohio–3121.

{¶ 11} With these considerations settled, we review appellant's three assignments of error:

[I.] THE TRIAL COURT ERRED IN FAILING TO DISMISS APPELLANT'S CASE FOR A VIOLATION OF HIS RIGHT TO SPEEDY TRIAL.

[II.] INSUFFICIENT EVIDENCE EXISTED TO CONVICT APPELLANT AND CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[III.] THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENSE COUNSEL'S MOTION PURSUANT TO RULE 29 AT THE CLOSE OF THE STATE'S CASE.

*State v. Lytle*, 10th Dist. No. 13AP-866, 2015 WL 1372810, at *1-3 (Ohio Ct. App. March 26, 2015). On March 26, 2015, the appellate court held as follows:

> {¶ 89} In summary, appellant's first assignment of error is overruled. His second and third assignments of error are overruled in part and mooted to the extent that they address the charge of conspiracy to commit kidnapping. Appellant's conviction for kidnapping is vacated. His convictions for aggravated burglary, abduction, violation of a protection order, and conspiracy to commit murder are affirmed. The judgment of the Franklin County Court of Common Pleas is affirmed in part and vacated in part, and this cause is remanded to that court to enter judgment reflecting the jury's verdict on the conspiracy to commit kidnapping charge and to resentence appellant on all convictions.

*Id*. at *19. Petitioner did not file a timely appeal. On May 1, 2017, he filed a motion for a delayed appeal. (ECF No. 7, PAGEID # 403.) On June 21, 2017, the Ohio Supreme Court denied his motion for a delayed appeal. *State v. Lytle*, 149 Ohio St.3d 1430 (Ohio 2017).

Pursuant to the remand of the Ohio Court of Appeals, on May 14, 2015, the trial court issued a new judgment entry of sentence. (ECF No. 7, PAGEID # 258-261.) Petitioner filed a timely appeal. The state appellate court summarized the facts as follows:

> {¶ 1} Defendant-appellant, Daniel W. Lytle, appeals the May 14, 2015 judgment of the Franklin County Court of Common Pleas resentencing him following this court's decision in *State v. Lytle*, 10th Dist. No. 13AP–866, 2015–Ohio–1133. For the following reasons, we reverse the judgment of the trial court.
>
> I. Facts and Procedural Background
>
> {¶ 2} Appellant challenges only his conviction for conspiracy to commit kidnapping. As we extensively reviewed the factual and procedural history of this case in our prior decision, we shall limit our discussion to only those facts relevant to the disposition of the present appeal. *See id*. at ¶ 2–8, 27–50, 83.

4

{¶ 3} Appellant's conviction for conspiracy to commit kidnapping was based largely on the testimony of Wayne VanBlarcume. At trial, VanBlarcume testified that, on December 18, 2012, he received a call from a friend who asked if he was interested in making some money. VanBlarcume stated he was interested, and agreed to the distribution of his phone number. Approximately 15 minutes later, VanBlarcume received a call from a man who identified himself as "Stan." (Tr. Vol.IV, 472.) "Stan" asked if he could come over to talk to VanBlarcume, VanBlarcume agreed and provided his home address.

{¶ 4} Approximately 15 minutes later, "Stan" arrived at VanBlarcume's house, and VanBlarcume got into his car. VanBlarcume later identified the caller, "Stan," both in a police photo array and at trial, as appellant. Appellant told VanBlarcume that his wife was trying to frame him for breaking into her house and putting a knife to her throat. As a result, appellant stated "[h]e'd like to get somebody to mess his wife up and cut her face up with a box cutter * * * [s]o she could look in the mirror and think of him every time she looks in the mirror." (Tr. Vol.IV, 474.) Appellant asked VanBlarcume to find someone to complete this task for him. Appellant then drove VanBlarcume to his wife's house, pointed out which house she lived in, and then returned VanBlarcume to his home. VanBlarcume testified he had no intention of helping appellant and did not agree to help appellant. VanBlarcume told appellant "I'd see what I could do, and that was it." (Tr. Vol.IV, 478.)

{¶ 5} After appellant departed, VanBlarcume contacted law enforcement, but did not receive a response. On December 30, 2012, VanBlarcume received a call from appellant, who asked if VanBlarcume knew someone named Jimmy Lee. VanBlarcume said that he did know him, but that he was in prison. On January 2, 2013, after seeing a local news story describing appellant's arrest, VanBlarcume again contacted law enforcement and identified appellant in a photo array. VanBlarcume stated at trial that he was "100 percent sure" that appellant was the man who wanted him to find someone to cut his wife's face. (Tr. Vol.IV, 494.)

{¶ 6} At trial, plaintiff-appellee, State of Ohio, also introduced telephone records corroborating appellant's calls to VanBlarcume on December 18 and 30, 2012.

{¶ 7} On January 9, 2013, a Franklin County Grand Jury indicted appellant, charging him with eight criminal counts: one count of conspiracy to commit aggravated murder, in violation of R.C. 2923.01 and 2903.01, a felony of the first degree; one count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree; one count of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree; one count of kidnapping, in violation of R.C. 2905.01, a felony of the first degree; one count of violating a protection order, in violation of R.C. 2919.27, a felony of the third degree; one count of abduction, in violation of R.C. 2905.02, a felony of the third degree; one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree; and one count of conspiracy to commit kidnapping, in violation of R.C. 2923.01 and 2905.01, a felony of the second degree. On July 8, 2013, the trial court filed an entry granting

the state's motion to amend the indictment. The entry reflected the amendment of the count of conspiracy to commit aggravated murder to a single count of conspiracy to commit murder, in violation of R.C. 2923.01 and 2903.02, a felony of the first degree. Additionally, the trial court dismissed the counts of kidnapping and domestic violence at the state's request.

{¶ 8} Beginning July 8, 2013, the case was tried before a jury. On July 16, 2013, the jury returned a verdict finding appellant guilty of the remaining charges except for aggravated robbery. On September 12, 2013, the trial court held a sentencing hearing and imposed consecutive sentences for the offenses of conspiracy to commit murder, aggravated burglary, and conspiracy to commit kidnapping, which were to run concurrently with the sentence for abduction for a total of 27 years imprisonment. On the same day, the trial court filed a judgment entry reflecting appellant's conviction and sentence.

{¶ 9} On appeal, this court found that appellant's right to a speedy trial was not violated and affirmed appellant's convictions for aggravated burglary, abduction, violation of a protection order, and conspiracy to commit murder. *Lytle* at ¶ 89. However, we found that the trial court, in the September 12, 2013 sentencing entry, erroneously identified the conspiracy to commit kidnapping verdict as kidnapping proper, which required us to vacate the conviction and remand to the trial court for the limited purpose of issuing a corrected judgment entry before undertaking a review of the conviction. *Id*. at ¶ 7–10.

{¶ 10} On May 4, 2015, the trial court held a resentencing hearing, imposing a sentence identical to the one imposed on September 12, 2013. On May 14, 2015, the trial court filed a judgment entry reflecting appellant's resentencing and properly identifying appellant's conviction for conspiracy to commit kidnapping.

II. Assignments of Error

{¶ 11} Appellant appeals and assigns the following two assignments of error for our review:

[I.] Appellant was convicted of conspiracy to commit kidnapping in the absence of evidence sufficient to support a finding of guilty in violation of his right to due process as guaranteed by the Fifth and Fourteenth [A]mendments to the United States Constitution and comparable provisions of the Ohio Constitution.

[II.] Appellant's conviction for conspiracy to commit kidnapping was against the manifest weight of the evidence in violation of his right to due process as guaranteed by the Ohio Constitution.

*State v. Lytle*, 10th Dist. No. 15AP-556, 2016 WL 1461773, at *1-3 (Ohio Ct. App. April 14, 2016). On April 14, 2016, the appellate court sustained Petitioner's first assignment of error,

reversing the judgment of the trial court, and again remanding the case to the trial court for re-sentencing. *Id.* On September 14, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Lytle*, 146 Ohio St.3d 1503 (Ohio 2016).

Pursuant to the remand of the state appellate court, on December 19, 2016, the trial court again issued a new judgment entry of sentence. (ECF No. 7, PAGEID # 375-79.) Through new counsel, Petitioner filed a timely appeal. (PAGEID # 391.) However, the appellate court subsequently granted his motion to dismiss that appeal. (PAGEID # 393, 399.)

On August 16, 2017, Petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). On October 13, 2017, the appellate court denied the Rule 26(B) application as untimely. (PAGEID # 503.) Petitioner did not file an appeal to the Ohio Supreme Court.

On May 31, 2018, Petitioner filed this *Petition* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied his right to a speedy trial under Ohio law and in violation of *Barker v. Wingo*, 407 U.S. 514 (1972) (claim one); that the evidence is constitutionally insufficient to sustain his convictions (claim two); that he was denied the effective assistance of appellate counsel because his attorney failed to argue on appeal that the trial court lacked subject-matter jurisdiction to permit the amendment of the Indictment (claim three); and that he was denied the effective assistance of appellate counsel, because his attorney failed to assert on direct appeal that he was convicted in violation of the Confrontation Clause (claim four). It is the position of the Respondent that Petitioner's claims are waived or without merit.

## II. Analysis

### A. State-Law Speedy Trial Claim

In claim one, Petitioner asserts that he was denied his right to a speedy trial. To the extent that he raises an issue regarding the alleged violation of state law, or state speedy trial statutes, it does not provide him a basis for relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 18 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such circumstances do not exist here.

### B. Federal Speedy Trial Claim

#### 1. Fair Presentment

Petitioner also asserts in claim one that he was denied his federal constitutional right to a speedy trial. Respondent argues that Petitioner has waived this federal claim by failing to present it to the state appellate court. *Return of Writ* (ECF No. 8, PAGEID # 1587.) The undersigned disagrees.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

In the United State Court of Appeals for the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

Here, Petitioner argued in the Ohio Court of Appeals not only that the trial court violated Ohio's speedy trial statutes, but that he was denied his right to a speedy trial under the Sixth Amendment. He also referred to various federal cases in support of this claim, such as *Klopfer v. North Carolina*, 386 U.S. 213 (1967); *Barker v. Wingo*, 407 U.S. 514 (1969); *Smith v. Hooey*, 393 U.S. 374 (1969); *United States v. Ewell*, 383 U.S. 116 (1966); and *United States v. Marion*, 404 U.S. 307 (1971). (ECF No. 7, PAGEID # 135-36.) In addition, the state appellate court addressed this federal claim. *See Lytle*, 2015 WL1372810, at *4. Under these circumstances, the

9

undersigned finds that Petitioner has not waived his federal speedy trial claim for review in these proceedings by failing to present it to the state appellate court.

However, as explained below, the undersigned finds that Plaintiff's claims are barred from review under the doctrine of procedural default.

### 2. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This requires the petitioner to present "the same claim under the same theory" to the state courts before raising it on federal habeas review. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987).

One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the United States Supreme Court explained in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are procedurally defaulted.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must determine whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that the petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner must demonstrate cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.), *cert. denied sub nom. Leroy v. Morris*, 474 U.S. 831 (1985).

In light of the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 479. Such is the case because before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if the claim is procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement as follows:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman:* "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S. Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. Id. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained

it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id*. at 854, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S. Ct. 587, 94 L.Ed. 761 (1950)).

*Id*. at 452–53.

If, after considering all four factors of the *Maupin* test, the Court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray,* 477 U.S. at 495–96), *cert. denied*, 135 S. Ct. 1545 (2015).

### a. Application to Claims One and Two

Petitioner asserted in the Ohio Court of Appeals that he had been denied his right to a speedy trial and that the evidence is constitutionally insufficient to sustain his convictions; however, he failed thereafter to file a timely appeal to the Ohio Supreme Court, and the Ohio Supreme Court denied his motion for a delayed appeal. Consequently, Petitioner has procedurally defaulted claims one and two for review in these proceedings. *See Watkins v. Warden, Madison Correctional Institution*, No. 2:18-cv-590, 2018 WL 3142854, at *6 (S.D. Ohio June 26, 2018) (citations omitted); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

### b. Application to Claims Three and Four

In claims three and four, Petitioner asserts that he was denied the effective assistance of appellate counsel. Petitioner likewise has procedurally defaulted these claims by failing to file a timely Rule 26(B) application. The state appellate court denied his delayed Rule 26(B) application for failure to establish good cause for the untimely filing, reasoning as follows:

13

> App.R. 26(B)(1) provides that "[a]n application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Journalization of the underlying appellate judgment in this case occurred on April 14, 2016 for *Lytle II*, over one year before appellant filed his application for delayed reopening.
>
> . . . . Appellant [] claims in his application that good cause exists for his failure to timely file his application under App.R. 26(B) and provides his own affidavit in support of such claim. In his affidavit, appellant states that, following his first appeal in Lytle I, his former counsel "incorrectly led me to believe that he could again challenge the convictions and sentence, those initially affirmed by this Court on the first appeal, through subsequent appeals." (Appellant's Aff. at ¶ 11.) Appellant further claims that, on March 17, 2017, following his resentencing on remand from Lytle II, he learned through correspondence with new counsel appointed to represent him on his third appeal that he would be unable to further appeal his previously affirmed convictions. However, in the same correspondence, appointed counsel for appellant's third appeal informed him that he could file an application for reopening under App.R. 26(B).
>
> Here, regardless of whether or not appellant was aware prior to being informed by appointed counsel on March 17, 2017 of the potential for relief through an application for reopening, appellant's lack of legal knowledge does not automatically excuse him from the filing requirements of App.R. 26(B). *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, ¶ 10, quoting *State v. Reddick*, 72 Ohio St.3d 88, 91 (1995) (" 'Lack of effort or imagination, and ignorance of the law * * * do not automatically establish good cause for failure to seek timely relief under App.R. 26(B).''); *State v. LaMar*, 102 Ohio St.3d 467, 2004-Ohio-3976, ¶ 9, quoting *State v. Winstead*, 74 Ohio St.3d 277, 278 (1996) ("The 90-day requirement in [App.R. 26(B)] is 'applicable to all appellants.' "); *State v. Richardson,* 8th Dist. No. 87886, 2008-Ohio-2360, ¶ 2. Even if we were to consider the March 17, 2017 correspondence in place of the date of the journalization of the underlying judgments for purposes of complying with App.R. 26(B), appellant nevertheless fails to explain the nearly five-month delay between March 17, 2017 and the filing of his delayed application for reopening on August 16, 2017. As a result, we conclude appellant has failed to demonstrate good cause as required by App.R. 26(B)(2)(b) for his untimely filing. Therefore, we need not consider appellant's arguments regarding ineffective assistance of appellate counsel.

(ECF No. 7, PAGEID # 506-07.) Thus, Petitioner has likewise procedurally defaulted his claims of the denial of the effective assistance of appellate counsel. *See Scuba v. Brigano*, 527 F.3d 479, 488-89 (6th Cir. 2007). Moreover, Petitioner did not file an appeal of the appellate court's decision to the Ohio Supreme Court. He may now no longer do so, as Ohio does not permit

14

delayed appeals in Rule 26(B) proceedings. Ohio Supreme Court Rule of Practice 7.01(A)(4)(c). Petitioner has consequently additionally procedurally defaulted his claim of the denial of the effective assistance of appellate counsel on this basis. *See Johnson v. Turner*, 2:14-cv-01908, 2016 WL 6963177, at * (S.D. Ohio Nov. 29, 2016). The state courts were unable to enforce this procedural rule due to the nature of Petitioner's procedural default.

### c. Cause and Prejudice

Petitioner may still obtain review of these claims on the merits, if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations. As cause for his procedural defaults, Petitioner asserts the denial of the effective assistance of appellate counsel based on his attorney's failure to file a timely appeal in the Ohio Supreme Court or in Rule 26(B) proceedings.[1] He also asserts that negligent mailing practices in the Pickaway Correctional Institution prevented his timely filing. (*See Petitioner's Memorandum in Opposition to Respondent's Answer/Return of Writ to Dismiss Federal Habeas Corpus*, ECF No. 13, PAGEID # 1643-46.) Petitioner's arguments are not persuasive.

The right to counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Under the rule of *Coleman v. Thompson*, 501 U.S. 722 (1991), attorney error in proceedings wherein there is no right to counsel—such as in the filing of a motion for a discretionary appeal with the Ohio Supreme Court or in Rule 26(B) proceedings—cannot serve as cause for a procedural default. *See McClain v. Kelly*, 631 F. App'x 422, 436-37 (6th Cir. 2015) (citations omitted). In addition, because Petitioner's reliance

---

[1] Petitioner stated in his motion for a delayed appeal to the Ohio Supreme Court that his retained counsel had agreed to file an appeal to the Ohio Supreme Court, but did not do so and never advised him of the 45 day time limit for filing an appeal. (ECF No. 7, PAGEID # 405.) Petitioner represents that he learned, on March 17, 2017, when speaking with the public defender, that he could not longer appeal his claims. (See PAGEID # 436-38.)

15

upon alleged negligent mailing practices lacks record support, he has failed to establish cause for his procedural defaults.

### d. Actual Innocence

Finally, Plaintiff has failed to establish that his claims may avoid the procedural bar under the actual innocence exception.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U. S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Sixth Circuit has offered the following explanation of the actual innocence exception:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway

16

and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ +] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted).

Because Petitioner fails to satisfy these standards, the actual innocence exception does not operate to save his otherwise procedurally defaulted claims.

### III. Disposition

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*<br>
CHELSEY M. VASCURA<br>
UNITED STATES MAGISTRATE JUDGE